UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OCTAVIA WINTERS,

        Plaintiff,

   v.

CITY OF KENOSHA, et al.

        Defendants.

Case No. 25-cv-1804-bhl

## SCREENING ORDER

    In this lawsuit, *pro se* Plaintiff Octavia Winters asserts federal civil rights claims against the Milwaukee Police Department (MPD) and various unknown officers based on a series of interactions she had with them concerning her minor child. (ECF No. 1.) On December 4, 2025, the Court granted Winters's request to proceed *in forma pauperis* (IFP) but concluded that her initial complaint failed to include sufficient factual allegations to state a claim and therefore dismissed it. (ECF No. 5.) In doing so, the Court granted Winters leave to amend to try to correct the issues identified in the Court's screening order. (*Id*.) Winters has filed an amended complaint, (ECF No. 6), and the matter is now before the Court for the screening of the amended complaint.[1]

## LEGAL STANDARD

    In screening a *pro se* complaint, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he tenet that a court must

---

[1] Winters has filed two other civil rights lawsuits related to child custody issues. (*See Winters v. City of Milwaukee*, 25-cv-01802-BHL (ECF No. 6); *Winters v. Kerkman*, Case No. 26-cv-0173-BHL, (ECF No. 1).)

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ALLEGATIONS

Winters is a resident of Milwaukee County, Wisconsin and the "sole legal custodian and primary physician custodian of her minor son." (ECF No. 6 ¶4.) She holds "valid Wisconsin court orders" granting her sole legal custody and placement of her son, and has obtained a restraining order prohibiting Jerrell Griffin Sr., and other unnamed third parties, from contacting her. (*Id.* ¶6.)

On July 6 and 7, 2025, Winters presented these orders to various police officers, including Officer Gibbons and Deputy Rogers. (*Id.* ¶7.) The officers did not "pursue felony custodial interference or restraining order violations." (*Id.* ¶8.) Deputy Rogers "stated that felony charges had been submitted to the District Attorney when no such submission occurred." (*Id.* ¶9.) Winters also alleges that officers failed to conduct welfare checks or act to locate Winters's son during this same time period. (*Id.* ¶10.) She was also prevented from speaking to supervisors and was threatened with arrest "for requesting enforcement." (*Id.* ¶11.)

On July 9, 2025, officers interfered with Winters's "lawful recovery of her son and followed her in a threatening manner without cause." (*Id.* ¶12.) On July 18, 21, and 26, 2025, unnamed persons denied Winters "the ability to file felony reports despite admitted violations." (*Id.* ¶12.) Detective Kowski promised to "advance charges" but later refused to do so even after Winters had submitted evidence. (*Id.* ¶14.) Sergeant Beller dismissed Winters, hung up during her phone calls, and did not file charges. (*Id.* ¶15.)

Winters alleges that Lieutenant Hecker "denied Internal Affairs processing and withheld records." (*Id.* ¶16.) On August 11, 2025, Officer Rohrs "refused enforcement despite admissions." (*Id.* ¶17.) On August 25, 2025, Officer Crawford transported Winters's son to the Milwaukee Police Department for a "drop-off," but "failed to document or report the custodial interference

involved in that transfer." (*Id.* ¶9.) On August 26, 2025, Winters was "pulled over and harassed by three officers, denied filing felony reports, and told her court orders would not be enforced." (*Id.* ¶19.) On the same day, officers yelled at Winters's son, "coerced him, accepted a false allegation from a prohibited third party, and assisted in drafting false statements." (*Id.* ¶20.) She also claims that Defendants "allowed false reports" against her at the same time the "den[ied] jurisdiction for her legitimate filings." (*Id.* ¶22.)

## ANALYSIS

Based on these factual allegations, Winters attempts to assert six claims. Counts I through V of her amended complaint invoke 42 U.S.C. §1983 to assert civil rights violations against Defendants. She alleges that Defendants: (1) violated her fundamental parental rights of familial integrity under the Fourteenth Amendment (Count I); (2) violated her Fourteenth Amendment Equal Protection rights (Count II); (3) "fabricat[ed] evidence" (Count III); (4) unlawfully retaliated against her for seeking enforcement of her state court orders (Count IV); and (5) that the City and County of Kenosha had an unconstitutional policy that violated her rights and are liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Count V). Last, Count VI is a civil rights conspiracy claim under 42 U.S.C. §1985.

In Count I of her amended complaint, Winters alleges that the Defendants deprived her of her fundamental parental rights. (ECF No. 6 ¶25.) Winters's allegations are sufficient to survive screening, although the Court has questions as to the specifics and viability of her legal theory. Parents have a recognized fundamental right to make decisions concerning the care, custody, and control of their children, but this right is limited. *See Troxel v. Granville*, 530 U.S. 57 (2000); *see also Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1019 (7th Cir. 2000) ("[T]he constitutional right to familial integrity is not absolute.")). For example, government actors, including police officers or social workers, may remove children from a parent's care when there is definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse, provided there is appropriate process given to the parents. *See Brokaw*, 235 F.3d at 1019 (7th Cir. 2000) ("[A] balance must be reached between the fundamental right to the family unit and the state's interest in protecting children from abuse, especially in cases where children are removed from their homes."). Other Circuits have also recognized claims for lesser interference with parental rights. *See e.g. David v. Kaulukukui,* 38 F.4th 792 (9th Cir. 2020) (allegation that officer worked with child's father to circumvent mother's custody order stated claim under due

process and unreasonable seizure principles); *Schulkers v. Kammer*, 955 F.3d 520 (6th Cir. 2020) (forcing family to adhere to prevention plan that constrained mother's ability to be alone with children for approximately two months violated due process rights). In her complaint, Winters does not accuse any Defendant of removing her child from her custody or care,[2] but alleges that Defendants failed to act in various ways she would have liked. She complains that Defendants did not: (1) enforce her restraining orders, (2) charge an unnamed person with a felony, (3) conduct some form of "Internal affairs processing," or (4) properly document "custodial interference" in the course of interacting with her and her child. (ECF No. 6 ¶¶8–11, 13–18.) Whether *these* failures to act can amount to a substantive due process violation is questionable. There is generally no Constitutional duty for police to protect individuals who are not in their custody from a private third party's interference with their rights, or to enforce restraining orders or arrest other persons for a crime. *See Deshaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189 (1989); *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012); *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005). Winters also alleges, however, that Defendants affirmatively "interfered with [her] lawful recovery of her son" when they followed her in a "threatening manner", later pulled her over and harassed her, and instructed her son to make false statements. (ECF No. 6 ¶¶12, 19–21.) These allegations, read generously at the screening stage, might support a claim against the Defendant officers and the Court will therefore allow this claim to survive screening.

      In Count II, Winters alleges that "defendants selectively denied police services afforded to others." (ECF No. 6 ¶26.) To raise a claim under the equal protection clause, a plaintiff must allege purposeful discrimination directed at an identifiable or suspect class. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also McClesky v. Kemp*, 481 U.S. 279, 292 (1987). A plaintiff may also proceed alleging "class of one" discrimination but must allege treatment different from others similarly situated. *See Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Winters does not allege facts to support her Fourteenth Amendment equal protection claim. Her only statements that references this claim are conclusory assertions that "Defendants selectively denied [her] police services afforded to others[]" and "Defendants' actions constitute a pattern and practice of denying [her] equal protection and due process." (ECF No. 6 ¶¶26, 24.) She does not allege that she is a member of a protected class or describe how she could

---

[2] She does assert that her child was removed from her care in a complaint filed in a lawsuit against the City of Milwaukee and various Milwaukee police department officers.

be considered a class of one. *Geinosky*, 675 F.3d at 279, 292. Because she has not plausibly alleged facts that would suggest Defendants violated the equal protection clause during their interactions with her, this claim will also be dismissed.

In Count III, Winters alleges that "Defendants fabricated and coerced false evidence against" her. (ECF No. 6 ¶27.) These allegations also fail to state a claim. The Constitution can be violated when a state actor creates false evidence, but to state such a claim, Winters must allege that a person acting under color of law created false evidence and then used it against her to deprive her of a liberty interest, either by using the false evidence to obtain a wrongful conviction at trial, or using it to justify detention pre-trial. *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) (holding Due Process Clause protects against the use of fabricated evidence to obtain a wrongful conviction at trial); *Lewis v. City of Chicago*, 914 F.3d 472, 475 (7th Cir. 2019) (holding Fourth Amendment provides constitutional protection against pretrial detention based on fabricated evidence)). To the Court's knowledge, no court has recognized a fabricated evidence claim brought under Section 1983 outside the context of evidence being used in connection to a criminal proceeding. This claim does not seem to fit Winters's facts, because she was never charged with a crime. Even if a fabricated evidence claim *could* extend to a child custody hearing, Winters does not allege that any evidence was actually used against her at all. Because she does not allege that any fabricated evidence was used against her, this claim will also be dismissed.

In Count IV, Winters asserts a claim for "retaliation," which the Court will interpret as a First Amendment retaliation claim. To state a claim for first amendment retaliation, a plaintiff must allege facts sufficient to establish or infer that (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the state actor's decision to take retaliatory action. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). While discovery may shed further light on the circumstances, the Court concludes that, reading the amended complaint generously, Winters has sufficiently alleged facts to support this claim. Under Winters's theory, she engaged in protected activity by seeking enforcement of her custody and restraining orders, and three unnamed officers retaliated during an August 26, 2025 incident in which she was "pulled over and harassed . . . , denied filing felony reports, and told her court orders would not be enforced." (*Id.* ¶¶6–8, 19, 28.) She alleges that she attempted to make police reports and contacted police officers about her custody and restraining orders, which can be

activity protected by the First Amendment. Fairly soon after attempting to make these police reports, she claims she was soon pulled over and harassed, and officers mentioned her protected activity during this interaction. These factual allegations are sufficient to allow the Court to infer that the officers pulled her over in relation for her prior protected activity. Construed in this way, the officers' actions would likely deter a reasonable person from attempting to make future police reports. Winters may therefore pursue her First Amendment retaliation claim against the unknown officers.

In Count V, Winters attempts to sue the City of Kenosha and the County of Kenosha for the individual Defendants' alleged violations of her civil rights. Such claims are governed by *Monell*. Because Winters's allegations are insufficient to support a municipal liability claim, this claim will also be dismissed. To state a municipal liability claim under Section 1983 and *Monell*, a plaintiff must allege that she suffered a constitutional injury, and that the municipality authorized or maintained a custom of approving the unconstitutional conduct. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)). Mere legal conclusions that the municipality is liable are not enough; the complaint must include facts supporting those conclusions. *Iqbal*, 556 U.S. at 678. Winters's complaint does not allege any facts to establish that Kenosha County or the City of Kenosha maintained any policy pursuant to which her rights were violated. This claim therefore must be dismissed.

Winters final claim is a 42 U.S.C. §1985 claim alleging that the "Defendants conspired with private parties to deprive [her] of rights." (ECF No. 6 ¶30.) Section 1985(3) provides a remedy when "two or more persons in any state or Territory conspire . . . for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws." To state a claim under this provision, Winters must allege (1) the existence of a conspiracy; (2) a purpose of depriving her of equal protection of the laws; (3) an act in furtherance of the alleged conspiracy; and (4) an injury to her or property or a deprivation of a right or privilege granted to U.S. citizens. *Majeske v. Fraternal Ord. of Police, Loc. Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). Additionally, Winters must plead that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022) (citations omitted). Class-based discriminatory animus includes discrimination based on sex, religion, ethnicity, and political loyalty. *Brokaw*, 235 F.3d at 1024 (citations omitted). Winters's Section 1985(3) claim fails because she has not

alleged any fact to support the contention that any conspiracy was motivated by her race, sex, religion, ethnicity, or political loyalty. From her complaint, the Court infers that any alleged conspiracy was motivated by Winters's repeated contacts with police. That, however, is not class-based discrimination as defined by the Seventh Circuit and as necessary to support a Section 1985(3) claim. Accordingly, Winters's civil conspiracy claim will also be dismissed.

The only claims that Winters may proceed on are her Section 1983 claim for a denial of her right to familial integrity[3] and for first amendment retaliation against the officers she alleges pulled her over. (ECF No. 6 ¶28.) Because Winters does not know the names of all the defendants she is suing in those claims, the Court will add Police Chief Patrick Patton as a defendant for the limited purpose of helping Glowicki identify the names of Defendants. *See Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996). The Court will order the Marshals to serve Patton with Winters's complaint and a copy of this order. Patton does not need to respond to the complaint. After Patton's lawyer files an appearance in this case, Winters may serve discovery upon Patton (by mailing it to Patton's attorney at the address given in the attorney's notice of appearance) to get information that will help her identify the names of the defendants. For example, Winters may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because Winters does not state a claim against Patton, her discovery requests must be limited to information or documents that will help her learn the names of the defendants she is suing. Winters may not ask Patton about any other topic, and Patton is under no obligation to respond to requests about any other topic.

After Winters learns the names of the people who she alleges violated her constitutional rights, she must file a motion to substitute their names for the John Doe placeholders. The Court will dismiss Patton as a defendant once Winters identifies the John Doe Defendants' names. After the John Doe Defendants have an opportunity to respond to Winters's complaint, the Court will set a deadline for discovery. At that point, Winters may use discovery to get the information she believes she needs to prove her claims.

Winters must identify the names of the John Doe Defendants within sixty (60) days of Patton's attorney appearing. If Winters does not identify the defendants or does not explain to the Court why she is unable to do so, the Court may dismiss her case based on her failure to diligently prosecute it. *See* Civil L.R. 41(c).

---

[3] This claim is limited to the allegations involving officers *acting*, not failing to act. (*See* ECF No. 6 ¶¶12, 19–21.)

If any of the defendants, upon receiving the amended complaint, believe that Winters fails to state a claim, or that they have a defense that precludes liability that they can raise at the pleadings stage, the Court's screening order does not preclude them from filing a motion to dismiss, or motion for judgment on the pleadings.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Winters's amended complaint, ECF No. 6, is **DISMISSED in part.** Defendants City of Kenosha, Kenosha Police Department, Kenosha County Sheriff's Department, Officers Gibbons, Deputy Rogers, Officer Winter, Officer Colon, and Officer Riesselman are **DISMISSED**. Counts II– III and Counts V–VI are **DISMISSED**.

**IT IS FURTHER ORDERED** that the United States Marshal must serve a copy of the complaint and this Order on Detective Kowski, Sergeant Beller, Lieutenant Hecker, Officer Rohrs, Officer Crawford, and Police Chief Patrick D. Patton under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give Winters information on how to remit payment. The Court is not involved in collection of the fee.

**IT IS FURTHER ORDERED** that Patton does not have to respond to Winters's complaint; however, he must respond to Winters's discovery requests as described in this order.

**IT IS FURTHER ORDERED** that Winters identify the real names of the John Doe Defendants within **sixty (60) days** of Patton appearing in the case. If Winters does not, or does not explain to the Court why he is unable to identify their real names, the Court may dismiss her case based on her failure to diligently prosecute it. *See* Civil L.R. 41(c).

Dated at Milwaukee, Wisconsin on February 17, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge