UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

OCTAVIA WINTERS,

Plaintiff,

Case No. 25-cv-1804-bhl

v.

CITY OF KENOSHA, et al.

Defendants.

---

**ORDER**

---

On November 17, 2025, Plaintiff Octavia Winters filed an initial complaint in this lawsuit that contained almost no facts. (ECF No. 1.) That same day, she filed a nearly identical complaint in a separate lawsuit. *See Winters v. City of Milwaukee Police Department*, Case No. 25-cv-1804-bhl (Nov. 17, 2025). The Court issued a screening order in this case and dismissed the initial complaint for failure to state a claim, but granted Winters leave to amend with a warning that she not make identical filings in multiple cases. (ECF No. 5.) Winters responded by filing an amended complaint, (ECF No. 6), which the Court also screened, (ECF No. 7). The Court allowed Winters to proceed on a substantive due process claim and First Amendment retaliation claim pleaded in that amended complaint. (*Id.* at 7.) Because these claims allegedly involved the actions of unknown officers pulling her over and harassing her, the Court added Police Chief Patrick Patton as a nominal defendant, for the limited purpose of responding to Winters's discovery requests made to attempt to identify those officers. (*Id.*)

Winters then filed an unsigned second amended complaint, (ECF No. 25), which the Court struck for violating Federal Rule of Civil Procedure 11(a). (ECF No. 29.) Instead of simply proceeding on the seemingly viable claims that had survived the Court's screening order, Winters has filed a further motion in which she requests several forms of relief. (ECF No. 30.) She requests that the Court reconsider its order striking her second amended complaint, vacate its order striking her second amended complaint, grant her leave to file a second amended complaint, and reconsider its order denying her electronic filing privileges. (*Id.* at 1.) She also requests reassignment under

28 U.S.C. §455(a). (*Id.* at 4.) She also filed an additional motion seeking to compel further discovery responses from the nominal defendant, Chief Patton.[1] (ECF No. 31.) She further filed a motion seeking "status clarification," objecting to the delay in ruling on her motions, and requesting the Court reassign her case to a different judge. (ECF No. 41.)

The Court will allow Winters's latest attempt to amend her complaint and will treat her proposed second amended complaint as the operative pleading. In this order, the Court will also screen that complaint pursuant to 28 U.S.C. §1915(e)(2).[2] Because the second amended complaint fails to state a claim, the Court will dismiss her complaint, and, as she has already amended her complaint multiple times, the dismissal will be with prejudice. The Court will deny Winters's motions for reassignment. Because her case will be dismissed, her motions for reconsideration of the order denying her electronic filing privileges, motion to compel, and motion to subpoena witnesses will all be denied as moot.

## ALLEGATIONS

Winters is a resident of Milwaukee, Wisconsin and the parent of a minor child. (ECF No. 30-1 ¶1.) In her various complaints, Winters raises her dissatisfaction with the Kenosha Police Department, and Kenosha County Sheriff's Office's responses to her attempts to locate and exercise custodial rights over her teenage son during the summer and fall of 2025. Her latest pleading names 18 individual defendants (employees and police officers employed by the Kenosha Police Department and Kenosha County Sheriff's department), twenty-five John Does, the City of Kenosha, Kenosha County, Kenosha Police Department, Kenosha County Sheriff's Department, and Kenosha Fire and Police Commission. (*Id.* at 1–2.) Her second amended complaint is confusing. It intersperses facts with legal conclusions. It references events occurring in 2016, 2017, and 2021. (*Id.* ¶¶93–95.) She repeatedly refers to "violators" and "custodial interference," without making clear what people or conduct she refers to. (*E.g.*, *id.* ¶¶53, 62, 67, 73, 76, 82.)

On July 4, 2025, Winters's son's father brought him to Kenosha, which Winters contends violated her custodial rights and a restraining order. (*Id.* ¶32.) The child received medical treatment and had a prescription filled two days later. (*Id.* ¶¶33–34.) None of this concerns the Kenosha Police Department.

---

[1]Defendants have responded, and included the discovery requests and their objections, noting that Winters sought material far outside the very limited scope of discovery she was allowed to conduct under the Court's order. (ECF No. 38; ECF No. 38-3.)

[2]Granting leave to amend her complaint renders moot Winters's motion for reconsideration of the Court's order striking her unsigned complaint and motion to vacate that order. (ECF No. 39.)

Over the next three days, July 7 to July 9, 2025, Winters attempted to have her son returned to Milwaukee and spoke with various officers, but she did not ultimately recover her son, and the various Kenosha officers did not charge his father with any crime. (*Id.* ¶¶35–37.) On July 9, 2025, Winters went to the Kenosha Police Department to retrieve her son, but officers there did not immediately release him to her and instead questioned him. (*Id.* ¶¶39–40.) Winters also "addressed" issues about the child's medical records, presumably with the police officers. (*Id.* ¶41.) On July 18, 2025, Winters went to the Kenosha police station again and met with various officers there to provide "custody documentation, restraining order proof, and medical evidence." (*Id*. ¶¶42–43.) A Kenosha officer told her that a welfare check had been conducted, but did not provide a report or documentation to Winters, and Winters was told to file new complaints. (*Id.* ¶¶44–45.)

On July 21, 2025, Winters returned to the Kenosha police station, spoke to more officers, contacted the Kenosha County District Attorney's office, and tried to seek "enforcement of criminal violations." (*Id.* ¶¶46–49.) She does not identify what the violations are, or whom she wanted the district attorney to prosecute or the police to arrest. Winters continued to speak to various police employees about the matter over the next few days. At one point she was told the matter would be referred to the District Attorney, but then later told by a Kenosha Detective that he would not do so, as he did not believe a crime had been committed. (*Id.* ¶¶50–53.) On July 24, 2025, Kenosha police did not "proceed on [Winters's] complaint." (*Id.* ¶54.) Winters does not specify what her complaint was or what proceeding on it would entail.

On July 25, 2025, Winters requested a welfare check in Kenosha, presumably of her child, although she does not specify. (*Id.* ¶55.) Over the next few days, Winters contacted Kenosha's child protective services agency, "pursued records," and requested body camera footage, surveillance reports, and related evidence about her interactions with police, but did not receive the documents she requested (*Id*. ¶¶56–61.) She then attempted to file additional reports "concerning custodial interference, false reporting, false documentation, and related conduct occurring in Kenosha" and requested records from the Kenosha Police Department. (*Id.* ¶¶62–63.)

In August 2025, Winters again attempted to file reports with the Kenosha Police Department and the Kenosha County Sheriff's Department and contacted the Kenosha County District Attorney's office about restraining order violations and other alleged crimes. (*Id.* ¶¶64–

73.) On August 1, 2025, the Kenosha Police Department would not take her reports and locked her out of the building. (*Id.* ¶¶64–65.) On August 11, 2025, Winters went to the Kenosha County District Attorney's office and was escorted to the Kenosha Police station because of "missing, conflicting, or unprocessed reports." (*Id.* ¶¶69–70.) She spoke to officers there and made additional reports. She was told that "the matter" had been sent to the District Attorney's office. (*Id.* ¶72.) Winters also filed an internal affairs complaint and addressed the Kenosha Fire and Police Commission and requested an investigation into the Kenosha Police Department's conduct and failure to act. (*Id.* ¶¶74–78.) Winters continued to request reports from her many interactions with police.

In her second amended complaint, she includes one sentence stating that she was "pulled over and detained by three unidentified [Kenosha Police Department] Officers" on August 25, 2025. (*Id.* ¶85.) She further asserts that she has not received a "corresponding report" despite requests. (*Id.* ¶86.) In response, nominal defendant Chief Patton explained that Winters had an interaction with police on August 25, 2026, that the Kenosha Police Department produced relevant body camera footage of that incident to her but no report had been written for that interaction, and Winters requested reports for August 26, 2025, a date on which she was not pulled over. (ECF No. 38-5 at 8–9.)

Winters continued to request records and "followed up" about enforcement through September and October 2025. (ECF No. 30-1 ¶¶83–87.) In November, Winters submitted "preservation requests" to the Kenosha County Sheriff's Department and an individual officer there, requesting that reports, body camera footage, surveillance, video, audio, dispatch materials, and related records be preserved and produced to her. (*Id.* ¶¶88–90.) The officer represented that these materials could be retained and Winters could obtain them, but Winters did not receive the full materials requested. (*Id.* ¶91.)

Winters previously reported safety concerns involving her minor child and his father. Winters asserts these older events, including an alleged 2021 incident in which her child's father allegedly tried to run her off the road, are part of a pattern of Defendants' failure to act. (*Id.* ¶¶94–95.) The sections in the second amended complaint titled "Defendants' Misconduct" and "Additional Misconduct" do not allege specific facts about specific defendants, but rather conclusory allegations and unparticularized accusations that fail to state a claim. (*Id.* at 9–12.)

## ANALYSIS

### I. Winters's Complaint Fails to State a Claim and Will be Dismissed at Screening.

Winters has been granted leave to proceed *in forma pauperis* (IFP). (ECF No. 5.) The IFP statute also requires the Court to dismiss a case at any time if it determines that the plaintiff's allegations of poverty are "untrue," or if the action is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2). Accordingly, after granting a *pro se* plaintiff's IFP request, the Court may screen the complaint to ensure the case should be allowed to move forward. In screening a *pro se* complaint, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions occurred, and the nature and extent of any damage or injury the actions caused.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

Winters's complaint describes four claims, all of which she attempts to bring under 42 U.S.C. §1983. To state a claim under 42 U.S.C. §1983, Winters must identify a person or persons

acting under color of law who violated her federal rights. *DiDonato v. Panatera*, 24 F.4th 1156, 1159 (7th Cir. 2022). Police officers are generally persons who can be sued under Section 1983. But for various other reasons described below, Winters's theories fail to state a claim. Winters no longer attempts to bring a First Amendment retaliation claim related to being pulled over, and does not allege any factual link between the actions of the unidentified officers on August 25, 2026, and her attempts to exercise custodial rights over her child. As this is Winters's second amended complaint, the Court will dismiss her complaint without leave to amend.

### A. Count I Fails Because Winters Has Not Alleged that Defendants Affirmatively Interfered With Her Right To Familial Association.

Winters asserts that Defendants violated her Fourteenth Amendment substantive due process rights by refusing to enforce her restraining order and custody order, "interfering with reunification, mischaracterizing criminal conduct as civil," and not providing her the reports she requested to her satisfaction. (ECF No. 30-1 at 12.) Winters has not alleged sufficient facts to support this claim, and it will therefore be dismissed.

To state a claim for a violation of her substantive due process rights, a plaintiff must plead facts to support an inference that: (1) a government actor's conduct violated the plaintiff's fundamental rights or liberties; and (2) the conduct was both arbitrary and irrational. *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).) Substantive due process protects against only the most egregious and outrageous government action. *Id.* Parents have a recognized fundamental right to make decisions concerning the care, custody, and control of their children. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir. 2000); *see generally Troxel v. Granville*, 530 U.S. 57 (2000). The government's unreasonable forced separation of a child from his parent can violate substantive due process if the government's conduct is arbitrary and irrational. *See Brokaw*, 235 F.3d at 1018–19.

But Winters does not allege that any Defendant removed her child from her care. The only affirmative acts she now identifies are that officers questioned her child on July 9, 2025, rather than immediately releasing him to her custody, (ECF No. 30-1 ¶¶39–40), and that she was pulled over on August 25, 2026. (*Id.* ¶85.) The first act, the police allegedly questioning her teenage son, does not implicate Winters's substantive due process rights to familial association with her child. The Supreme Court has made it clear that substantive due process should not be called upon

when a specific constitutional provision protects the right allegedly infringed upon. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Brokaw*, 235 F.3d at 1017–18. Interpreting Winters's allegations in the light most favorable to her, a claim that her son was unreasonably seized must still be brought as a Fourth Amendment claim, not a substantive due process claim.[3] She also does not assert any facts to suggest the seizure was unreasonable within the meaning of the Fourth Amendment.

The second act, as alleged by Winters, that three other officers pulled her over and detained her for an unspecified amount of time, also cannot support a substantive due process claim for interference with her right to familial association. It too would be more properly brought as a Fourth Amendment claim asserting an unreasonable seizure. *Brokaw*, 235 F.3d at 1017–18. Further, Winters does not allege any facts about the officers' conduct during the stop, and does not allege the traffic stop was improper. (ECF No. 30-1 ¶¶85–86.) There are no allegations linking this to her efforts to recover her child besides it occurring in the same month as some of her efforts and involving *other* Kenosha police officers. For those reasons, this claim will be dismissed.

### B. Count III, a "State Created Danger" Claim, Fails Because Winters Was Not Harmed as A Result of the Officers' Action And She Cannot Bring a Claim for Her Child's Injury As a Non-Lawyer.

Winters also attempts to bring a "state created danger" substantive due process claim under Fourteenth Amendment, but that claim also fails. (ECF No. 30-1 at 13–14.) There is generally no constitutional duty for police officers or other state actors to protect individuals from harm caused by third-party actors. *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989). There are two exceptions to this general rule: the special relationship exception, which arises when individuals are harmed by a third party while in state custody, and the "state created danger" exception, which may arise when the State affirmatively creates a danger to an individual or renders an individual more vulnerable to a known danger. *See id.* at 200–01. To fall within this exception, a plaintiff must allege facts "that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 988

[3]But this seizure would be her *son's* potential constitutional injury, not *Winters's* injury. As a non-lawyer, Winters cannot bring claims on behalf of another person. *See Foster v. Board of Educ. of City of Chicago*, 611 Fed. App'x 874, 877 (7th Cir. 2015) ("[T]he rule prohibiting a nonlawyer from representing another person extends to a parent attempting to represent her minor child pro se.") (collecting cases).

(7th Cir. 2021) (citing *Buchanon-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). To be a proximate cause of the plaintiff's injury, the state created danger must create a foreseeable type of risk to a foreseeable class of persons; "[a] generalized risk of indefinite duration and degree is insufficient." *Id.* at 989 (citing *Buchanon-Moore*, 570 F.3d at 828–29). This claim fails because Winters does not plead that a third party harmed her, or some other harm befell her, because of Defendants' conduct. She merely pleads that she and her child were placed in an abstractly worse position by Defendants' failure to act in the way she wished. Moreover, if a third party injured Winters's child, it would be Winters's *child's injury*, and not a claim that Winters could bring *pro se*. Again, Winters, a non-lawyer, cannot represent her child in a lawsuit. *Foster*, 611 Fed. App'x at 877. This claim will also be dismissed.

### C. Count IV Fails Because Winters Does Not Allege Purposeful Discrimination Directed at an Identifiable or Suspect Class.

Winters also asserts an equal protection claim but, as with her other claims, does not allege facts to support it. (ECF No. 30-1 at 14.) To raise a claim under the equal protection clause, a plaintiff must generally allege purposeful discrimination directed at an identifiable or suspect class. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Winters does not allege that she is a member of any identifiable or suspect class. An exception to this general rule is for "class of one" equal protection claims, but Winters has also not alleged facts to support such a theory. To proceed as a "class of one," a plaintiff must allege that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685–86 (7th Cir. 2013) (citations omitted). Winters has not pleaded facts that suggest that she was singled out for disparate treatment of any type, let alone that her treatment was irrational. *See Iqbal*, 556 U.S. at 678; *see also D.B. ex rel. Kurtis B.,* 725 F.3d at 685–87. Winters does not even reference the existence of similarly situated individuals. Winters's complaint therefore fails to state a claim for a violation of the equal protection clause.

### D. Count II Fails Because Winters Does Not Allege Facts to Suggest the City Approved or Maintained a Policy of Unconstitutional Conduct.

Winters's remaining claim is one for municipal liability against the City of Kenosha, County of Kenosha, and Kenosha Fire and Police Commission. To state a municipal liability claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a plaintiff must allege that

she suffered a constitutional injury and that the municipality authorized or maintained a custom of approving the unconstitutional conduct. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)). As discussed, Winters has not shown a constitutional injury, and without a constitutional violation, her *Monell* claim cannot proceed. *Id.* at 424–25.

## II. Winters's Motions for Judicial Recusal Will be Denied.

A federal judge shall disqualify himself in "any proceeding in which his impartiality might reasonable be questioned" and any proceeding "[w]here he has a personal bias or prejudice concerning a party[.]" 28 U.S.C. §455(a)–(b)(1). In determining whether a judge must disqualify himself under these provisions, "the question is whether a reasonable person would be convinced the judge was biased." *Lac du Flambeau Indians v. Stop Treaty Abuse-Wis.,* 991 F.2d 1249, 1255 (7th Cir. 1993). The negative bias or prejudice must be grounded in some personal animus or malice that the judge holds against the party seeking recusal, of the kind that a fair-minded person could *not* set aside when deciding a case. *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996). Recusal is only required when actual bias or prejudice is shown by compelling evidence that would convince a reasonable person. *Id.* (quoting *Liteky v. United States*, 520 U.S. 540, 555 (1994)).

Winters seeks recusal under 28 U.S.C. §455(a) based on rulings the Court made while presiding over this litigation, and the fact that the Court referenced the existence of her multiple other civil rights cases in some of those rulings. (ECF Nos. 30 & 41.) Her recusal motion will be denied. Adverse rulings, standing alone, are not evidence of bias. *See Thomas v. Dart*, 39 F.4th 835, 844 (7th Cir. 2022) (citing *Liteky,* 510 U.S. at 555.) Winters offers no evidence of any disqualifying conflict of interest or other ground for recusal. Moreover, the Court noted the existence of her other cases because she filed near identical complaints, (ECF No. 5 at 1, n.1) and identical filings, (ECF Nos. 4 & 9). Winters also complains that she is being held to a higher pleading standard. (ECF No. 30 at 4–5.) She is not. The Court has screened her complaints pursuant to 28 U.S.C. §1915(e)(2). It allowed her to proceed on her viable claims. (ECF No. 7 at 7.) She instead chose to amend her complaint and now advances legal theories that are simply not viable. Winters's allegations and affidavit would not cause a reasonable, well-informed observer to question the Court's impartiality.

## CONCLUSION

For the reasons discussed above, Winters's second amended complaint fails to state a claim and will be dismissed, this time without leave to amend, and with prejudice. The Seventh Circuit has instructed that a *pro se* plaintiff be afforded one opportunity to amend her complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Winters has already taken that opportunity, and the Court will not permit Winters to repeatedly amend her complaint. Her motion for reassignment will also be denied, for the reasons discussed above.

Winters has filed several other motions that are now moot. Her motion to compel is moot because this case is being closed, as is her motion seeking an extension of time to identify the unknown defendants.[4] As mentioned above, Winters also no longer asserts a First Amendment retaliation claim against those unknown defendants. Her motion to subpoena witnesses is denied as moot. (ECF No. 32.) Her motion for status clarification and "objection" to continued delay are also denied as moot. Her case is being dismissed and she does not have leave to file a third amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to file a second amended complaint is **GRANTED**, ECF No. 30, but her complaint, ECF No. 30-1, is dismissed with prejudice for failure to state a claim. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's motions for recusal and reassignment, ECF Nos. 30 and 41, are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's additional motions, to reconsider and vacate the order striking her unsigned complaint, to reconsider the order denying her electronic filing privileges, to compel and extend time to identify unknown defendants, and to subpoena witnesses, ECF Nos. 30, 31, 32, & 40, are **DENIED as moot**.

Dated at Milwaukee, Wisconsin on October 8, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

[4]Were the Court to decide that motion on its merits, it would deny it, as Winters clearly sought discovery outside the limited scope allowed by the Court's order. She failed to confer with opposing counsel and attempt to resolve the dispute without the Court's involvement. (*See generally* ECF Nos. 38 & 38-3.)